United States Bankruptcy Court
Southern District of Texas
**ENTERED**
February 06, 2024
Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 20-33214 |
| FRANCOIS STANISLAS BELLON, | § | |
| | § | CHAPTER 7 |
| Debtor. | § | |
| | § | |
| EVA S. ENGELHART, CHAPTER 7 TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 23-3004 |
| | § | |
| FRANCOIS STANISLAS BELLON, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

### BACKGROUND

Shannon Drake moves for judgment on the pleadings and summary judgment on Plaintiff Eva S. Engelhart's breach of contract, fraud, and fraud-in-the-inducement claims. The Court denies Drake's motion for judgment on the pleadings, grants Engelhart leave to replead her fraud claims, denies summary judgment on the fraud claims, and grants Drake summary judgment on the breach of contract claim.

**I.   FACTUAL BACKGROUND**

Chapter 7 Trustee Eva S. Engelhart filed this complaint against Francois Stanislas Bellon, Shannon Drake, and God Made Me Funky, LLC. Bellon is the debtor. Drake is Bellon's girlfriend. God Made Me Funky is owned by Drake. *See* ECF No. 27.

Bellon's bankruptcy case was commenced by an involuntary petition filed on June 26, 2020. ECF No. 1, Case No. 20-33214. Relief was granted on September 11, 2020. Eva S. Engelhart was appointed to serve as the Chapter 7 Trustee on October 8, 2020. ECF No. 30 at 4.

During the course of the case, Bellon exhibited a pattern of failure to comply with the Court's orders and abuse of the bankruptcy process. *See* ECF No. 30 at 4; ECF Nos. 13, 24, 45, 123, Case No. 20-33214.

One of the orders that Bellon willfully disobeyed was a March 15, 2022, turnover order requiring Bellon to turn over certain pieces of allegedly valuable artwork. ECF No. 123, Case No. 20-33214. After Bellon failed to comply, the Court ordered the United States Marshals Service to bring Bellon before the Court due to his apparent civil contempt. ECF No. 129, Case No. 20-33214. Bellon would be released upon his compliance with the Court's Civil Contempt Order, which required Bellon to: (1) turn over each artwork identified in the Turnover Order (ECF No. 123); and (2) pay to Engelhart "an amount to offset the reduction in value of the pieces of art damaged by Mr. Bellon." ECF No. 129, Case 20-33214.

On February 3, 2021, Engelhart filed an adversary proceeding against Bellon's brother Vladimir Bellon. ECF No. 1, Adv. Proc. No. 21-3018. Engelhart sought to avoid Bellon's transfer to Vladimir Bellon of 350,000 shares of common stock of SODEXO. ECF No. 1, Adv. Proc. No. 21-3018. On June 15, 2021, the Court issued a Default Judgment mandating that Vladimir Bellon turn over the 350,000 shares. He failed to comply with the Court's Default Judgment and failed to appear and show cause for why he should not be held in civil contempt. ECF Nos. 38 & 42, Adv. Proc. No. 21-3018. The Court entered a Civil Contempt Order directing the Marshals Service to take Vladimir Bellon into custody. ECF No. 42, Adv. Proc. No. 21-3018. Vladimir Bellon was living in Mexico, so the order stated, "should Mr. [Vladimir] Bellon reenter the United States, the Marshals Service should immediately bring him before the Court." ECF No. 42, Case No. 21-3018.

Vladimir Bellon has not yet been brought before the Court under the Civil Contempt Order.

Engelhart and her attorney engaged in settlement negotiations with Bellon with respect to Engelhart's claims against the Bellon brothers. ECF No. 28 at 3. Drake took no part in the negotiations. *See* ECF Nos. 28-1 & 28-2. The negotiations resulted in a two-part compromise resolving Engelhart's claims against the Bellon brothers in exchange for the payment of $650,000. ECF No. 149, Case No. 20-33214.

The first part of the compromise was to resolve Engelhart's claims against Bellon. It was satisfied by payment of $100,000. That payment also resolved Bellon's civil contempt.

The second part of the compromise was to resolve Engelhart's claims against Vladimir Bellon. According to the Agreed Order Approving Compromise issued by the Court on July 18, 2022, Vladimir Bellon's contempt would only be purged upon payment of the remaining $550,000. ECF No. 149, Case No. 20-33214.

The $550,000 was to be paid as follows:

> "A promissory note in the amount of $550,000 payable to the Trustee [Engelhart], to be executed by God Made Me Funky, LLC with payments of $5,000 per week remitted on or before August 11, 2022 and thereafter remitted on every consecutive Thursday through and including October 27, [2022] and a balloon payment for the remaining balance remitted no later than November 3, 2022."

ECF No. 149, Case 20-33214.

Two months before the Court issued the Agreed Order Approving Compromise, Engelhart's attorney sent an email providing details of the settlement. The $550,000 promissory note was to be "executed by Mr. Bellon's girlfriend's company (the name of which to be provided) . . . . It is the parties' understanding that Mr. Bellon's girlfriend is obtaining the funds needed for the payoff of the note by refinancing her home

mortgage, but payment may come from any source." ECF No. 32-1. Drake—referred to in the prior email as "Mr. Bellon's girlfriend"—responded to the email chain the same day stating "I agree to all terms below. The name of my company is God Made Me Funky LLC. Please advise if anything further is due." ECF No. 32-1 at 4; *see* ECF No. 28 at 4.

God Made Me Funky executed the promissory note located at ECF No. 30-16 in August 2022. ECF No. 28 at 5, *see* n.4. Drake signed the note indicating she was signing in her capacity as President of God Made Me Funky. ECF No 30-16 at 4.

God Made Me Funky made four payments of $5,000 each on the note. ECF Nos. 1 at 5 & 28 at 5. God Made Me Funky failed to make any further payments, leaving $530,000.00 that is owed. ECF No. 1 at 5.

## II.  PROCEDURAL BACKGROUND

Trustee Engelhart seeks judgment against (i) God Made Me Funky for breach of the promissory note, (ii) God Made Me Funky, Drake, and Bellon for breach of the settlement agreement, fraud, and fraud-in-the-inducement, and (iii) Bellon for breach of his guaranty of the settlement obligations. ECF No. 1.

Drake seeks judgment on the pleadings (ECF No. 27) and summary judgment on all claims against her (ECF No. 28).

### A.  Motion for Judgment on the Pleadings

Drake moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on Engelhart's claims for fraud and fraud-in-the-inducement because the facts Engelhart alleged do not meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b). ECF No. 27 at 11. Drake asks the Court to dismiss Engelhart's fraud claims because the time to amend pleadings has passed. ECF No. 27 at 11. The deadline to amend pleadings was July 3, 2023. ECF No. 25 at 1. Drake filed her motions on September 29, 2023, which was the dispositive motions deadline. ECF Nos. 25, 27 & 28.

### B. Motion for Summary Judgment

Drake moves for summary judgment on the breach of contract claim and the fraud claims. Drake alleges the breach of contract claim is unprovable because the settlement agreement—the May 18, 2022, email exchange—is unenforceable for multiple reasons: its terms are too ambiguous and too indefinite, and Drake is not a party to the agreement. ECF No. 28 at 8.

Drake also alleges the fraud claims are deficient because Drake made no representations.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The dispute has been referred to the Bankruptcy Court under General Order 2012-6.

## LEGAL STANDARD

### I. MOTION FOR JUDGMENT ON THE PLEADINGS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). Rule 12(b)(6) provides for the defense of failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Therefore, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Otherwise, the claim must be dismissed. *Id.*

## II. PLEADING FRAUD

Federal Rule of Civil Procedure 9(b) states "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." In the Fifth Circuit, "the Rule 9(b) standards require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). "Put simply, Rule 9(b) requires the complaint to set forth 'the who, what, when, where, and how' of the events at issue." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008).

## III. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact means that evidence is such that a reasonable fact finder "could return a verdict for the nonmoving party." *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). It is the movant's burden to establish that no genuine issue of material fact exists. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (citing *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005)). A party asserting that a fact cannot be or is not genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. Fed. R. Civ. P. 56(c)(1). If the movant establishes "the absence of evidence supporting an essential element of the non-movant's case," the burden shifts to the non-movant to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326 (citing *Condrey*, 429 F.3d at 562).

In ruling on a motion for summary judgment, a court should view the facts and evidence in light most favorable to the non-moving party. *Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014). Nevertheless, the court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Env't. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015). The Court need only consider the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. *Aubrey v. Sch. Bd. of Lafayette Par.*, 92 F.3d 316, 318 (5th Cir. 1996). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).

### A.     Where State of Mind is an Element

Where state of mind is an essential element of the nonmoving party's claim,

> it is less fashionable to grant summary judgment because a party's state of mind is inherently a question of fact which turns on credibility. . . . This is not to say that the court can never enter summary judgment when intent or state of mind is at issue, . . . . Summary judgment, to be sure, may be appropriate, "[e]ven in cases where elusive concepts such as motive or intent are at issue, . . . if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation."

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265–66 (5th Cir. 1991) (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

### IV. TEXAS STATUTE OF FRAUDS

The Texas statute of frauds is located at § 26.01 of the Texas Business and Commerce Code. "Whether a contract comes within the statute of frauds is a question of law, which we review de novo." *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 642 (Tex. 2013).

The statute of frauds states that certain promises or agreements are "not enforceable unless the promise or agreement, or a memorandum of it, is (1) in writing; and (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him." Tex. Bus. & Com. Code Ann. § 26.01(a) (West). One such promise is "a promise by one person to answer for the debt, default, or miscarriage of another person[.]" *Id.* § 26.01(b)(2).

## DISCUSSION

### I. LEAVE TO REPLEAD FRAUD CLAIMS

Drake alleges Engelhart failed to meet the heightened pleading standard for fraud required by Rule 9(b). ECF No. 27 at 11. Specifically, Drake alleges Engelhart failed to specify when, where, and how the fraud was committed. ECF No. 27 at 10.

The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey*, 540 F.3d at 339 (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)).

Engelhart's complaint identifies the speakers as the Defendants. ECF No. 1 at 7. The complaint identifies the statements and representations that Engelhart contends are fraudulent, "namely that they would pay the settlement funds." *Id.* It alleges why the statements were fraudulent by stating: "The Defendants knew that the statements and representations were false at the time they made those statements and representations, because the Defendants had no intention of paying

the settlement funds." *Id.* Because Rule 9(b) allows "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally[,]" Engelhart's explanation of why the statements were fraudulent satisfies Rule 9(b). Fed. R. Civ. P. 9(b).

The complaint does not identify when and where the statements were made. *See* ECF No. 1. As set forth in the next paragraph, the parties, and the Court, plainly understand that the statements are contained in the e-mail referenced above. But, Engelhart inexplicably omits the details of the email (including the date) from her Complaint. Under Rules 12(c), 12(b)(6), and *Twombly*, the fraud and fraud-in-the-inducement claims must be dismissed. Fed. R. Civ. P. 12(b)(6) & 12(c); *Twombly*, 550 U.S. at 570. Under the circumstances, the omission did not contribute to confusion or misunderstanding. But the omission nonetheless exists.

Rule 15 permits a party to amend its pleading "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15. Although the complaint does not identify where and when the allegedly fraudulent conduct took place, Drake's Motion for Judgment on the Pleadings does. It identifies the May 18, 2022, email exchange as where and when the allegedly fraudulent representations were made. *See* ECF No. 27 at 3–4. The Parties' subsequent pleadings reference the email exchange as where and when the alleged fraud took place. Whether fraud was committed is an issue for trial. In the interest of justice under Rule 15, Engelhart may file an amended complaint to cure the deficiencies. The deadline to file the amended complaint is February 27, 2024.

## II.   SUMMARY JUDGMENT ON THE FRAUD CLAIMS IS DENIED

Drake seeks summary judgment on the fraud claims based on her argument that she made no representations. She argues that the only allegation that she made a representation is the representation in a single sentence of the email exchange. ECF No. 28 at 12; *see* ECF No. 32-1 at 2. That sentence is: "It is the parties' understanding that

Mr. Bellon's girlfriend is obtaining the funds needed for the payoff of the note by refinancing her home mortgage, but payment may come from any source." ECF No. 32-1 at 2.

But Drake's assumption that "Engelhart is dangling her fraud claims against Drake on the single sentence in the email" is unsubstantiated. ECF No. 28 at 12. Nowhere in Engelhart's complaint does she narrow the basis of her fraud claims to this sentence. The complaint states: "The Defendants made false statements and representations to the Trustee, namely that they would pay the settlement funds." ECF No. 1 at 7. Engelhart's response to the motion for summary judgment contemplates the whole email exchange as the basis for the fraud claim. ECF No. 30 at 7 ("Drake . . . agreed to language that expressly stated she would be refinancing her home mortgage to pay the balance of the promissory note."). The Court will examine the email exchange as a whole to determine whether Drake made any material representations.

A "representation" is a "presentation of fact—either by words or by conduct—made to induce someone to act, esp. to enter into a contract." *Representation*, BLACK'S LAW DICTIONARY (9th ed. 2009). "Material means a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (internal citation omitted). Drake's statement "I agree to all terms below" presented the fact that Drake agreed. The statement allegedly caused Englehart to agree to the settlement. A reasonable person would likely be induced to act on that information in determining his or her options in the proposed settlement.

It appears that, by arguing she made no representation, Drake may be arguing that God Made Me Funky made the representation instead of Drake. It is unclear this is Drake's argument. If it is, it is unsuccessful because it would not absolve Drake of fraud. If God Made Me Funky committed fraud, Drake would not necessarily be protected

by the corporate shield because of her own direct liability. Under direct liability, "the fact that an individual was acting in a corporate capacity does not prevent the individual from being held personally—or 'individually'—liable for the harm caused by those acts." *Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 478 (Tex. 2022), reh'g denied (Sept. 2, 2022), cert. denied, 143 S. Ct. 2493 (2023).

Summary judgment is improper. Whether the material representation was a fraudulent misrepresentation goes to Drake's state of mind, which "is inherently a question of fact which turns on credibility." *Int'l Shortstop, Inc.*, 939 F.2d at 1265.

Summary judgment is not appropriate because Engelhart does not "rest[] merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Int'l Shortstop, Inc.*, 939 F.2d at 1266. Engelhart points to the relationship between Drake and Bellon as a potential motivation for fraud. ECF No. 30 at 5 ("The Debtor was residing with Drake. . . . When Drake decided to enter into the settlement on behalf of the Debtor, she knew that the Trustee would, as a result, stop pursuing the Debtor. This is what Drake wanted to accomplish."). The Court must have an opportunity to directly observe witnesses and evaluate their testimony. Summary judgment is denied as to the fraud claims.

### III. SUMMARY JUDGMENT ON THE BREACH OF CONTRACT CLAIM IS GRANTED

Drake moves for summary judgment on the breach of contract claim. Summary judgment is granted because the contract is not enforceable against Drake.

The Texas statute of frauds requires "a promise by one person to answer for the debt, . . . of another person" to be in writing and signed "by the person to be charged[.]" Tex. Bus. & Com. Code Ann. § 26.01 (West). "Whether a contract comes within the statute of frauds is a question of law[.]" *Dynegy*, 422 S.W.3d at 642.

The "contract" at issue is the settlement agreement in the May 18, 2022, email exchange. ECF No. 32-1. Drake asserts she is not a party to the contract, and the contract's terms are too indefinite and ambiguous to be enforceable against her. ECF No. 28 at 8. Engelhart argues that the terms of the settlement agreement email were sufficiently clear, "expressly stat[ing] 'It is the parties' understanding that Mr. Bellon's girlfriend is obtaining the funds needed for the payoff of the note by refinancing her home mortgage, but payment may come from any source.'" ECF No. 30 at 6; *see* ECF No. 32-1 at 2. Drake responded stating: "I agree to all terms below." ECF No. 32-1 at 4.

The terms alleged by Englehart include an allegation that Drake promised to pay the balance of the promissory note. ECF No. 30 at 7. This constitutes a promise by Drake to answer for the debt of God Made Me Funky, otherwise known as a guaranty or suretyship. As a matter of law, the agreement comes within the statute of frauds. *See Dynegy*, 422 S.W.3d at 642. To be enforceable against Drake, the promise must have been in writing and signed by her. *See* Tex. Bus. & Com. Code Ann. § 26.01 (West). The email does not include that promise and Engelhart has provided no such signed writing.

Summary judgment is granted on the breach of contract claim.

## CONCLUSION

A separate order will be issued setting the trial date and deadline to amend pleadings.

SIGNED 02/06/2024

Marvin Isgur
United States Bankruptcy Judge